IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ZELMADITH VALENTIN MERCADO,<br><br>Plaintiff,<br><br>v.<br><br>HON. JULIO ROLDAN CONCEPCION, et al.,<br><br>Defendants. | CIVIL NO. 23-1501 (CVR) |

**OPINION AND ORDER**

**INTRODUCTION**

Plaintiff Zelmadith Valentín Mercado ("Plaintiff") brings this cause of action against the Municipality of Aguadilla and its Mayor, Julio Roldán Concepción ("Mayor Roldán" or "the Mayor" and collectively "Defendants") under 28 U.S.C. § 1983, alleging violations to her First and Fourteenth Amendment rights and seeking damages therefrom. She proffers she was a career employee at the Municipality of Aguadilla and a member of the New Progressive Party ("NPP"). In 2020, Mayor Roldán ran for the position of mayor on the Popular Democratic Party ("PDP") ticket and won the election. After the new mayor was sworn in, Plaintiff avers she was transferred to other municipal dependencies, finally ending up in the cemetery. She claims this was done due to her political affiliation and that, because of these actions, Defendants are liable to her.

Before the Court now is the Municipality of Aguadilla's "Motion to Dismiss Under Rules 12(b)(6) and 8(2)(a) and Memorandum in Support Thereof" ("Motion to Dismiss"). (Docket No. 10). The petition stands unopposed, as Plaintiff failed to file any opposition thereto.

Case 3:23-cv-01501-CVR   Document 12   Filed 03/18/24   Page 2 of 14

Zelmadith Valentín Mercado v. Julio Roldán Concepción, et al.
Opinion and Order
Civil 23-1501 (CVR)
Page 2
_____

For the reasons explained below, the Municipality's Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

## STANDARD

Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A "short and plain" statement needs only enough detail to provide a defendant with "'fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965 (2007); see also Erickson v. Pardus, 551 U.S. 89, 93, 127 S.Ct. 2197, 2200 (2007) ("Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement . . . ' Specific facts are not necessary."). In order to show an entitlement to relief, a complaint must contain enough factual material "to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555, 127 S.Ct. at 1965.

When addressing a motion to dismiss under Rule 12, the court must "accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiffs." Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 48-49 (1st Cir. 2009). Under Twombly, not much is required, but a plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions." Twombly, 550 U.S. at 555, 127 S.Ct. at 1965. A plaintiff is required to present allegations that nudge the claims "across the line from conceivable to plausible" in order to comply with the requirements of Rule 8(a). Id. at 570; see also Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937 (2009).

# STATEMENT OF FACTS[1]

The Court accepts Plaintiff's allegations as true for purposes of the Motion to Dismiss. Ponsa-Rabell v. Santander Sec., LLC, 35 F.4th 26, 30 (1st Cir. 2022); O'Brien v. Deutsche Bank Nat'l Tr. Co., 948 F.3d 31, 35 (1st Cir. 2020).

Plaintiff is a career employee who began working at the Municipality of Aguadilla in 1999 at the Sports and Recreation Department and later worked at the Office of Access to the Integral Service System. Plaintiff has always belonged to the NPP and has worked in elections, actively participated in campaigns and public activities for its candidates and has held leadership positions within the NPP.

In the 2020 election cycle, co-Defendant Mayor Roldán, PDP President in Aguadilla, defeated the NPP mayoral candidate. After he was sworn in, Plaintiff was told to report to the Office of Tourism, Culture and Public Relations, and continued there until August 3, 2021, when she was appointed to the Office of the Mayor as an Administrative Assistant. Two (2) months later, on October 2, 2021, Plaintiff received a letter informing her she was being transferred to the Office of Demographic Records. When Plaintiff reported to work there, the office had no knowledge of the transfer. After the administrator of said office called Mayor Roldán's office to inquire about the personnel change, Plaintiff was told her transfer was effected pursuant to the Mayor's instructions. Plaintiff had no objection to these transfers and was willing to work where she was needed. However, she later informed Mayor Roldán about her inability to work in any of the Aguadilla's cemeteries because she has a phobia of death. She becomes very ill and

---

[1] All facts are derived from the Complaint. (Docket No. 1).

Case 3:23-cv-01501-CVR   Document 12   Filed 03/18/24   Page 4 of 14

Zelmadith Valentín Mercado v. Julio Roldán Concepción, et al.
Opinion and Order
Civil 23-1501 (CVR)
Page 4
_____

emotionally affected when friends or family members pass on. At that time, Mayor Roldán brushed off her comment, telling her "we all have to die."

During this time, Plaintiff kept attending NPP activities such as ward reorganizations, fund raisings and other political activities. After a big NPP meeting was held at the beginning of November 2022, Plaintiff received a letter transferring her to the Heaven Paradise Municipal Cemetery (Cementerio Municipal Paraíso del Cielo), allegedly due to needs of service. After receiving the transfer letter, Plaintiff began to feel very nervous and afraid, got heart palpitations, felt pressure on her chest, and started shaking, among others. She ended up reporting to the State Insurance Fund, where she remained under treatment until June 2023. Upon asking Mayor Roldán why he transferred her to the cemetery, he told her that he did not mind that she was an NPP member, but she was a municipal employee paid by him who had been actively campaigning against him.

Plaintiff has no responsibilities at the municipal cemetery and is nervous and under daily pressure because of her phobia. This situation has caused Plaintiff great anxiety, humiliation, and emotional pain and suffering. She proffers these actions were done by Mayor Roldán because of her political affiliation with the NPP and in violation of her constitutional rights. Since these actions were done at his behest and order, as the ultimate nominating and policymaking authority, Plaintiff argues they constitute the official policy of the Municipality of Aguadilla, which is also liable to her.

## LEGAL ANALYSIS

The Municipality of Aguadilla now proffers the case must be dismissed against it because Plaintiff has failed to argue a cognizable § 1983 claim for First Amendment or due process violations, as she does not identify the official municipal policy or custom

that gave rise to her cause of action. As to the supplemental causes of action, the Municipality of Aguadilla avers Plaintiff has brought forth claims under more specific labor laws and therefore, Puerto Rico law does not allow her separate damages claims to move forward. Finally, it argues Plaintiff failed to give prior notification to the Municipality of Aguadilla before bringing this action against it, and for this additional reason, the case must be dismissed.

**A. Section 1983.**

Section 1983 forbids a person, "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia" to deprive others of "any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. §1983. This is the traditional vehicle through which relief may be sought for claims of political discrimination by state actors. For purposes of this statute, Puerto Rico is the functional equivalent of a state. Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 54 (1st Cir. 2013); Remus-Milán v. Irizarry-Pagán, 81 F.Supp.3d 174, 177-78 (D.P.R. 2015).

To state a colorable claim pursuant to §1983, the Court must examine (1) whether the conduct complained of was committed by a person acting under the color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Cruz-Arce v. Mgmt. Admin. Servs. Corp., 19 F.4th 538, 543 (1st Cir. 2021); Sánchez v. Pereira-Castillo, 590 F.3d 31, 41 (1st Cir. 2009).

1. Under color of state law

Acting under color of state law requires that a "defendant in a §1983 action have exercised power possessed by virtue of state law and made possible only because the

wrongdoer is clothed with authority of state law." West v. Atkins, 487 U.S. 42, 49, 108 S.Ct. 2250, 2255 (1988). Municipalities may be sued directly under §1983 for monetary, declaratory, and injunctive relief and are considered persons under the statute. Monell v. City of New York, 436 U.S. 658, 690, 98 S.Ct. 2018 (1978). Municipal liability can be established in two ways: (1) when a municipal custom or policy causes a constitution violation, or (2) when a person with final decision-making authority took the action that violated the constitutional right. See Kelly v. LaForce, 288 F.3d 1, 9 (1st Cir. 2002); Bd. of Cnty. Com'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 403, 117 S.Ct. 1382 (1997); Albino v. Municipality of Guayanilla, 925 F.Supp.2d 186, 192-93 (D.P.R. 2013). Indeed, "[a] single decision by [a] person with final policy-making authority may result in municipal liability under certain circumstances", but the action must be undertaken by a municipal official with "final policy-making authority" in the relevant area. Welch v. Ciampa, 542 F.3d 927, 942 (1st Cir. 2008); Pembaur v. City of Cincinnati, 475 U.S. 469, 480, 106 S.Ct. 1292 (1986) ("it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances.").

At all relevant times, Plaintiff alleged that the conduct complained of occurred within the scope of Mayor Roldán's employment and while conducting his official duties. Therefore, Mayor Roldán acted under color of state law when the purported conduct transpired, and §1983 is the appropriate avenue to address Plaintiff's claims against the Municipality of Aguadilla.

2. Constitutional violation.

It has long been held that that freedom of association is a core activity protected by the First Amendment. Padilla-García v. Guillermo Rodríguez, 212 F.3d 69, 74 (1st Cir.

Case 3:23-cv-01501-CVR   Document 12   Filed 03/18/24   Page 7 of 14

Zelmadith Valentín Mercado v. Julio Roldán Concepción, et al.
Opinion and Order
Civil 23-1501 (CVR)
Page 7
_____

2000) (citing Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673 (1976)).  Many years ago, the United States Supreme Court held that non-policymaking public employees are protected from adverse employment decisions based on their political affiliation.  Elrod, 427 U.S. at 354, 96 S.Ct. at 2680; Branti v. Finkel, 445 U.S. 507, 516, 100 S.Ct. 1287, 1294 (1980); Rutan v. Republican Party, 497 U.S. 62, 75, 110 S.Ct. 2729, 2737 (1990).  While doing so, the Supreme Court emphasized the right to associate with the political party of one's choice as a basic constitutional freedom, a right which flows naturally from the principle that "'debate on public issues should be uninhibited, robust, and wide-open.'"  Elrod, 427 U.S. at 357, 96 S.Ct. at 2682 (quoting New York Times Co. v. Sullivan, 376 U.S. 254, 270, 84 S.Ct. 710, 721 (1964)).

In Ocasio Hernández v. Fortuño Burset, 640 F.3d 1 (1st Cir. 2011), the Court of Appeals for the First Circuit held that a *prima facie* case of political discrimination consists of four elements: "(1) that the plaintiff and defendant have opposing political affiliations, (2) that the defendant is aware of the plaintiff's affiliation, (3) that an adverse employment action occurred, and (4) that political affiliation was a substantial or motivating factor for the adverse employment action."  Id., at 13 (quoting Lamboy-Ortiz v. Ortiz-Vélez, 630 F.3d 228, 239 (1st Cir. 2010)).

As Twombly has clearly stated, however, all that is required at the motion to dismiss stage is the showing of a plausible entitlement to relief.  Twombly, 550 U.S. at 556, 127 S. Ct. at 1965.  Therefore, the Court's only role now is to determine whether the claims are plausible on the facts alleged, even if they are improbable, and actual evidence on the merits of the claims is unnecessary.  See Landrón & Vera, LLP, v. Somoza Colombani, Civil No. 12-1858, 2013 WL 2422807, at *5 (D.P.R. June 13, 2013) ("A *prima*

Case 3:23-cv-01501-CVR   Document 12   Filed 03/18/24   Page 8 of 14

Zelmadith Valentín Mercado v. Julio Roldán Concepción, et al.
Opinion and Order
Civil 23-1501 (CVR)
Page 8
_____

*facie* case is not the appropriate benchmark for determining whether a complaint has crossed the plausibility threshold"); Rodríguez-Reyes, 711 F.3d at 54 ("[T]he *prima facie* case is an evidentiary model, not a pleading standard, and there is no need to set forth a detailed evidentiary proffer in a complaint.").

Plaintiff's Complaint alleges that Mayor Roldán, as the ultimate nominating authority and policy maker, discriminated against her due to her political affiliation. After taking office, Mayor Roldán transferred Plaintiff to multiple municipal entities, ending up in the cemetery with no duties to perform. Upon being challenged by Plaintiff after her transfer there, he defended his actions and outright told her that he was aware she was a NPP member and that he knew she was campaigning against him. Thus, according to Plaintiff, the Municipality, through Mayor Roldán, juggled her through different job postings, ultimately discriminated and retaliated against her by placing her in the worst possible place to work, and these actions were politically motivated and directed by Defendants. Additionally, Plaintiff's affiliation with the NPP was well known by those politically involved in the Municipality of Aguadilla, including Mayor Roldán as head of the PDP there, as she had been a member, organizer and participant in NPP related causes and activities for many years. This is sufficient to meet the plausibility threshold of the four (4) elements of a political discrimination claim at this stage of the litigation.

The Municipality's defense is that the Complaint fails to allege an unconstitutional implementation or execution of a municipal custom, policy or regulation to support Plaintiff's claims. In other words, it avers that Plaintiff has failed to establish a policy or custom that discriminated and retaliated against NPP employees for exercising their First Amendment rights to free association, and likewise failed to evidence a policy that would

demonstrate due process violations. Nevertheless, as stated above, the Mayor was directly singled out by Plaintiff as a participant in these actions, where he identified her as a member of the opposing political party, indicated her party patronage was a reason for his actions, and transferred her to the place where she explicitly told him she would be unable work. Furthermore, under Puerto Rico law, the actions of a mayor, as the ultimate policy maker, "constitute [ ] the official policy of the municipality." Concepción v. Municipality of Gurabo, 560 F.Supp.2d 139, 142 (D.P.R. 2008); Cordero v. de Jesús-Méndez, 867 F.2d 1, 8 (1st Cir. 1989) (holding that "where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly", and finding the municipality "is liable as a matter of law for an unconstitutional discharge of its municipal employees by the Mayor"). Thus, Mayor Roldán was the ultimate policy making authority and performed the actions in this case while occupying said office, opening the door for the Municipality of Aguadilla's liability for the actions complained of under 43 U.S.C. § 1983.

Taken as true, as the Court must at this stage, these allegations are sufficient to give rise to plausible claims of entitlement to relief against the Municipality of Aguadilla. See Maldonado v. Municipality of Barceloneta, 682 F.Supp.2d 109, 159 (D.P.R. 2010) (mayor's actions constituted the official policy of the municipality; therefore, the municipality may be held liable under § 1983); Concepción, 560 F.Supp.2d at 141-142 (plaintiffs' allegations that defendants were policymakers and high ranking officials of the municipality and that they committed discriminatory acts, taken as true, gave rise to claims that could provide entitlement to relief against the municipality); Remus-Milán, 81 F.Supp.3d at 180-81 (colorable First Amendment claim stated as mayor's action's in

failing to renew appointments constituted the official policy of the municipality). Whether in fact Plaintiff will be able to eventually prove her claims on the merits remains to be seen and will undoubtedly be the subject of further dispositive motions and ultimately for the jury to determine at trial as the ultimate factfinder.

The Municipality of Aguadilla offers the case of Abdisamad v. City of Lewiston, 960 F.3d 56 (1st Cir. 2020) to buttress its argument that this case should be dismissed because there was not an allegation that an established municipal custom led to the constitutional violation. The Abdisamad case, however, is from the District of Maine, a municipality with different laws and regulations than the local ones and is additionally distinguishable on several grounds. First, Abdisamad was a wrongful death involving a drowned child and did not involve First Amendment claims of political discrimination. More importantly, and as applicable to the present case, under Puerto Rico law a discriminatory action taken by the final decision-making authority in a municipal government becomes the official policy of the municipality. Plaintiff did indeed allege in her Complaint that Mayor Roldán was the nominating authority for all the municipal employees, and that in ordering her transfers, which resulted in her working at the cemetery, his actions became the official policy of the Municipality of Aguadilla. (Docket No. 1, ¶¶ 21 and 23). Furthermore, it is no secret that actions such as the ones alleged in the present case have for many years been the norm in Puerto Rico after an election cycle is followed by a change in the municipal administrations, notwithstanding that a public employee's First Amendment right to associate with the political party of his or her choice has been held to be a basic constitutional right for several decades now under Elrod, Branti, and their progeny.

The same reasoning applies to Plaintiff's due process claims. It has been well established that the Fourteenth Amendment prohibits states from depriving a person of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV. Property interests are not created by the Constitution, but rather "stem from an independent source such as state law." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491 (1985); Alvarado Aguilera v. Negrón, 509 F.3d 50, 53 (1st Cir. 2007) Hatfield-Bermúdez v. Aldanondo-Rivera, 496 F.3d 51, 59 (1st Cir. 2007). Once a state confers a property interest in public employment, it may not deprive an individual of said interest without due process of law. Id. Career employees in Puerto Rico are chosen based on merit after a recruitment and selection process, and have a property right and a continued expectation in their continued employment. P.R. Laws Ann. tit. 3, § 1474(1). As applicable to this case, it is clear that "[P]romotions, transfers, and recalls after layoffs based on political affiliation or support are an impermissible infringement" on the rights of public employees. Rutan, 497 U.S. at 75, 110 S.Ct. at 2737.

The Complaint contends that Mayor Roldán, in a discriminatory fashion, transferred Plaintiff to different municipal dependencies without explanation and finally appointed her to work in the worst possible place in the municipality, where she has no duties to perform and is in constant stress and anguish due to a personal phobia, all because of her political affiliation. Furthermore, as previously discussed, because the Complaint alleges that Mayor Roldán, as the ultimate nominating or policymaking authority engaged in or ordered these transfers, the Municipality of Aguadilla can be held liable under 43 U.S.C. § 1983. This is enough at this juncture to find Plaintiff has made a

Case 3:23-cv-01501-CVR   Document 12   Filed 03/18/24   Page 12 of 14

Zelmadith Valentín Mercado v. Julio Roldán Concepción, et al.
Opinion and Order
Civil 23-1501 (CVR)
Page 12
_____

plausible claim for First and Fourteenth Amendment constitutional violations under § 1983.  Consequently, the Municipality's petition to dismiss the §1983 claims is DENIED.

**B. State claims.**

Regarding the state claims, Defendant first avers that it is not liable for damages in tort under the Puerto Rico Civil Code, as Plaintiff has claimed the same remedies under other labor laws.  The Court cannot agree.

Under Puerto Rico law, it has been well established that, when claims under more specific statutes have been pled, there can be no liability for the same harm pled under a more general statute.  <u>Rosario v. McConnell Valdés</u>, Civil No. 07-1505, 2008 WL 509204, *2 (D.P.R. 2008) ("to the extent that a specific labor law covers the conduct for which a plaintiff seeks damages, he is barred from using that same conduct to also bring a claim under Article 1802"); <u>see also</u> <u>Santini Rivera v. Serv. Air, Inc.</u>, 137 D.P.R. 1 (1994).  Thus, a claim for damages under Puerto Rico Civil Code Article 1536, P.R. Laws Ann. tit. 31, §10801 (2020), may only be brought by a party if it is based on tortious or negligent conduct distinct from that covered by the specific labor laws invoked.

This legal precept is not applicable to this case, however, as there are no allegations of violations to any other "specific" labor laws that would render a damages claim superfluous.  Instead, Plaintiff has brought a First and Fourteenth Amendment claim due to political discrimination and violation to due process pursuant to the federal Constitution in conjunction to the requisite damages claim, which renders this law inapplicable to the facts of this case.

The Municipality's second argument, its reliance on the 90-day municipal notification requirement, is likewise misplaced.

The Puerto Rico Municipal Code states that "[a]ny person that has a claim of any type against a municipality for personal or property damages caused by the fault or negligence of the municipality shall present written notification to the mayor, detailing in a clear and concise fashion, the time, place, cause and general nature of the damages suffered. Said notice will also additionally specify . . . in case of injury to the person, the place where the person received first received medical attention". P.R. Laws Ann. tit. 21, § 7082. Thus, notification is a prerequisite before bringing suit against a municipality in tort actions due to a municipality's negligence and must be notified within ninety (90) days from the date in which the party knew of the injury.

The Court finds this requirement is inapplicable to the present case. This not a typical slip and fall or a medical malpractice tort action brought pursuant to state law, and which clearly requires advance notice to the municipal tortfeasor to, among others, give a municipality advance opportunity to investigate the facts, facilitate prompt settlement, permit immediate inspection of the site before conditions change, discover names of witnesses to preserve their testimony, and to minimize damages by offering prompt medical treatment. Passalacqua v. Mun. de San Juan, 116 D.P.R. 618 (1985). It is evident that this statute applies, and clearly so states, to actions involving negligent acts by municipalities *for damages to person or property*. This is the reason why the statute requires that the notice specify where the injured person first received medical attention. That is not the situation in the present case, which was brought by a municipal employee to vindicate her constitutionally protected rights, and involves alleged intentional discriminatory acts at her work place by the highest-ranking member of the municipal government due to her political affiliation.

Finally, Plaintiff brings a claim under P.R. Laws tit. 29, §§ 136-138 pertaining to procedures and penalties in cases involving political discrimination at the workplace. Nonetheless, these laws were repealed several years ago. For this reason, this claim is DISMISSED WITH PREJUDICE.

## CONCLUSION

For the foregoing reasons, the Municipality of Aguadilla's Motion to Dismiss (Docket No. 10) is GRANTED IN PART and DENIED IN PART as follows:

- GRANTED as to the claim brought under P.R. Laws tit. 29, §§ 136-138 which is DISMISSED WITH PREJUDICE.
- DENIED as to all other claims.

**The Municipality is granted until April 1, 2024, to answer the Complaint.**

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 18th day of March 2024.

                         S/CAMILLE L. VELEZ-RIVE
                         CAMILLE L. VELEZ RIVE
                         UNITED STATES DISTRICT JUDGE